UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SARAH S. EX REL. L.S.,                                    Case No. 6:24-cv-01733-AR

                  Plaintiff,                              OPINION AND ORDER

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

        Plaintiff Sarah S. (last name omitted for privacy), on behalf of her minor child, L.S.,

seeks judicial review of the Commissioner's final decision denying her application for

supplemental security income under the Social Security Act. Plaintiff contends that the

Administrative Law Judge improperly adopted the medical opinion of the testifying medical

expert, incorrectly rejected her subjective symptom testimony, and failed to analyze all relevant

evidence resulting in a step-three error. (Pl.'s Br. 11-12, ECF 9.) As explained below, the

Commissioner's decision is affirmed.

## CHILDHOOD DISABILITY ANALYSIS

Persons under the age of 18 are disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1013 (9th Cir. 2003).

The ALJ applies a three-step evaluation to determine eligibility for supplemental security income benefits. 20 C.F.R. § 416.924(a); *Kristen R. ex rel. L.R. v. O'Malley*, 6:23-cv-431-SI, 2024 WL 4533443, at *1 (D. Or. Oct. 21, 2024). At step one, the ALJ considers whether the child has engaged in substantial gainful activity; if so, the child is not disabled and benefits are denied. 20 C.F.R. § 416.924(b). At step two, the ALJ must determine if the child has a medically determinable impairment that is severe; if not, the child is not disabled and benefits are denied. *Id.* § 416.924(c). At step three, the ALJ evaluates whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the Listings. *Id.* §§ 416.924(d), 416.925 (incorporating listings found at 20 C.F.R. Pt. 404, Subpt. P App. 1).

Functional equivalence for children means that the impairment or combination of impairments is of "listing-level severity." *Id.* § 416.926a(a). In other words, "it must result in two 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* The six functional domains are "intended to capture all of what a child can and cannot do" and are: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." *Id.* § 416.926a(b)(1).

A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities" and is "the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*. § 419.926a(e)(2)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities" and is "the equivalent of functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*. § 419.926a(e)(3)(i).

## ALJ'S DECISION

Plaintiff, on L.S.'s behalf, protectively filed an application for supplemental security income on December 21, 2021, alleging disability beginning December 1, 2021. (Tr. 51.) The claim was denied initially and on reconsideration. (Tr. 54-55, 61-62.) The ALJ held a hearing at which plaintiff appeared and testified about L.S.'s limitations. Dr. Gutierrez-Santiago, M.D., an impartial medical expert, also appeared at the hearing. On February 5, 2024, the ALJ issued an unfavorable decision, and on August 12, 2024, the Appeals Council denied review. (Tr. 1-6, 15-28, 32.)

In denying plaintiff's application for SSI, the ALJ followed the three-step sequential evaluation for children's disability benefits. At step one, the ALJ determined that L.S. had not engaged in substantial gainful activity since the application date. (Tr. 16.) At step two, the ALJ found that L.S. had several severe impairments: borderline intellectual functioning, a learning disorder, attention deficit hyperactivity disorder (ADHD), mild asthma, mild obstructive sleep apnea, refractive amblyopia, hyperopia, and astigmatism. (Tr. 16.) At step three, the ALJ determined that L.S.'s impairments singly or in combination did not meet, medically equal, or

functionally equal the severity of any listed impairment. (Tr. 17.) Accordingly, the ALJ found

that L.S. was not disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and

citation omitted). To determine whether substantial evidence exists, the court must weigh all the

evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

**A.**    ***Medical Opinion of Jessica Gutierrez-Santiago, M.D.***

The regulations require ALJs to evaluate the supportability and consistency of a medical

opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how

persuasive [they] find all of the medical opinions" and "explain how [they] considered the

supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

(quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the

medical source provides explanations and objective medical evidence to support their opinion.

20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion

is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. §

404.1520c(c)(2).

Dr. Gutierrez-Santiago testified that after reviewing L.S.'s entire records, L.S. had the following diagnoses: mild persistent asthma, ADHD, mild sleep apnea, dyslexia, hypermetropia astigmatism, and mild amblyopia. (Tr. 25, 36.) Dr. Guiterrez-Santiago also offered opinions about L.S.'s six domains of functional equivalence. She opined that L.S. had marked limitations in the first domain, less than marked limitations in the second, fifth, and sixth domains, and no limitations in the third and fourth domains. The ALJ found Dr. Gutierrez-Santiago's opinion persuasive because it was supported by a complete review of the record with detailed citations to that record, as well as being consistent with the record overall. (Tr. 25-36.)

Plaintiff advances two primary arguments concerning the ALJ's evaluation of Dr. Gutierrez-Santiago's opinion. First, plaintiff asserts that the ALJ erred in finding the opinion persuasive because Dr. Gutierrez-Santiago was not present for— and did not evaluate—her hearing testimony, and thus failed to comply with the Commissioner's Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-6-70 B. (Pl.'s Br. 13, ECF 9.) That HALLEX section[1] provides that a testifying medical expert "may attend the entire hearing, but this is not required. If the ME was not present to hear the pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record." HA 01260.070(B). Plaintiff remonstrates that she provided pertinent testimony regarding L.S.'s visual impairments and behavioral issues at home, and that her testimony "could have expanded the limitations" that Dr. Gutierrez-Santiago assessed. (Pl.'s Br. at 14, 21, ECF 9.) According to plaintiff, because Dr. Gutierrez-Santiago did not hear her

---

[1]    The Social Security Administration renumbered their HALLEX system, converting HALLEX I-2-6-70 B into HA 01260.70. https://www.ssa.gov/OP_Home/hallex/hallex.html

testimony about the adverse effects of L.S.'s visual limitations, conflicts with family members, and violence and meltdowns at home, that opinion was not based on the entire record, and the ALJ erred.

Plaintiff's first argument misses the mark. HALLEX is the Commissioner's internal policy manual and does not "carry the force of law and is not binding upon the agency" and the court does "not review allegations of non-compliance with its provisions." *Roberts v. Comm'r Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (quoting *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007) (citation modified). Put simply, "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010). The ALJ did not err by failing to comply with HALLEX or ensuring that Dr. Gutierrez-Santiago heard her testimony.

Second, plaintiff argues that the ALJ erred in finding Dr. Gutierrez-Santiago's opinion persuasive with respect to the domains of attending and completing tasks, acquiring and using information, and interacting and relating to others. The court addresses her arguments related to each domain separately.

According to plaintiff, Dr. Gutierrez's opinion that L.S. was less than markedly limited in the ability to attend and complete tasks is not supported by substantial evidence in the record. Despite testifying that L.S.'s IEP was reviewed, in plaintiff's view, Dr. Gutierrez-Santiago did not discuss that L.S. received specifically designed instruction, reading supports, supplemental aids, extended time, and other accommodations to ensure he stayed on task. (Pl.'s Br. at 15, ECF 9.) Without discussing the extra supervision L.S. required to complete tasks, plaintiff argues, the ALJ erred in finding Dr. Gutierrez-Santiago's opinion that L.S. was less than markedly limited in

*Sarah S. ex rel. L.S. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-01733-AR

the attending and completing tasks was supported. (*Id.* at 16.) Also argued by plaintiff is that the ALJ erred in failing to discuss how Dr. Gutierrez-Santiago's opinion is consistent with her testimony and Dr. Eagle's test results concerning his visual limitations. (*Id.* at 14.) Plaintiff's arguments are not persuasive.

Under the revised regulations, the ALJ is required to provide "an explanation supported by substantial evidence" of how the supportability and consistency factors were considered. *Woods*, 32 F.3d at 792. The ALJ's explanation of Dr. Gutierrez-Santiago's opinion is supported by substantial evidence here. Contrary to plaintiff's contention, the ALJ discussed L.S.'s IEP and the supports that he required in school when discussing the less than marked limitation in attending and completing tasks domain assessed by Dr. Gutierrez-Santiago. The ALJ pointed out that the assessed limitation was "consistent with the record, including [L.S.'s] difficulty focusing at school, with impulsive answers on exam, and fidgeting on exam, balanced against his satisfactory scores and proficient scores in following directions, homework, and self-management, low average working memory, processing speed, and verbal comprehension, and normal thought process, and lack of need for a supplemental aide during class." (Tr. 26.) Plaintiff argues that the ALJ's erred in finding Dr. Gutierrez-Santiago's opinion about attending and completing tasks supported by the record, suggesting that the doctor failed to consider all responses in a teacher questionnaire. (Pl.'s Br. at 15 (citing Tr. 38).) The court is not convinced that the comment in the teacher questionnaire about L.S. having "attention/hyperactivity difficulties when at school" undermines the ALJ's findings because the same authors rated L.S. with no or slight problems in the attending and completing tasks domain. (Tr. 204, 208.) At bottom, plaintiff argues for a different interpretation of the record with respect to L.S.'s ability to

complete homework and overall evaluation of the attending and completing tasks domain, yet the ALJ adequately explained how he considered the supportability factor with respect to Dr. Gutierrez-Santiago's opinion. The ALJ's analysis is backed by substantial evidence and by reasonable inferences in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Next, plaintiff argues that, because Dr. Gutierrez-Santiago's opinion failed to account for L.S.'s fifth percentile processing speeds, dyslexia and visual impairments, fourth and fifth percentile for reading and writing, and low IQ when analyzing the acquiring and using information domain, the ALJ erred by failing to explain how he considered the consistency factor as to Dr. Gutierrez-Santiago's opinion. (Pl.'s Br. at 18-19.)

As noted above, the consistency factor looks to the extent an opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). After a discussion of the evidence in the record, the ALJ found Dr. Gutierrez-Santiago's opinion persuasive and consistent with the complete record. Specifically concerning the doctor's opinion on the acquiring and using information domain, the ALJ pointed to L.S.'s

> low scores in math, reading, and writing, despite special education pull outs and classroom accommodation, with a borderline IQ, and dyslexia on exam, balanced against his improving writing and math scores, second-grade reading and math, with progress in solving word problems and writing sentences, and intact memory on exam, with low average visual spatial, working memory, and processing speed, average verbal comprehension and fluid reasoning.

(Tr. 26 (citations to other records in the transcript omitted).)

Moreover, when discussing medical evidence from other agency evaluators, the ALJ noted that Dr. Sergiy Barsukov, Psy.D., and Joshua Boyd, Psy.D., found L.S. to be markedly

limited in acquiring and using information and that their assessments with respect to that domain were consistent with Dr. Gutierrez-Santiago's opinion and the record. (Tr. 24-25.) Notably, plaintiff does not challenge the ALJ's evaluation of Dr. Barsukov's and Dr. Boyd's opinions. Plaintiff acknowledges that L.S.'s school records from 2022 to 2023 noted improving proficiency—as Dr. Gutierrez-Santiago opined; even so, plaintiff contends that the ALJ erred, highlighting testing performed by Dr. Alvord, Psy.D. (Pl.'s Br. at 18 (citing Tr. 37, 182, 210-211).) Dr. Alvord's May 19, 2022 Wide Range Achievement Test revealed that L.S. continued to score in the fourth and fifth percentiles on reading, spelling, and arithmetic. (Tr. 479.) Based on those scores, plaintiff argues that the ALJ failed to explain how Dr. Gutierrez-Santiago's opinion was consistent with Dr. Alvord's. (Pl.'s Br. at 18.) Not so. The ALJ thoroughly discussed the medical record and testing, explaining that he found Dr. Alvord's opinion only somewhat persuasive—a finding not challenged here. (Tr. 20-26.); *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (citation modified)).

Again, plaintiff argues for a different and more thorough discussion of the evidence, but the ALJ's rationale adequately explains how the consistency factor was considered, the findings are supported by substantial evidence, and the court finds no error in the ALJ's evaluation of Dr. Gutierrez-Santiago's opinion. *Lambert v. Saul*, 980 F.3d 1266, 1271 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

Lastly, turning to the interacting and relating to others domain, plaintiff argues that Dr. Gutierrez-Santiago ignored information relating to how L.S. struggles to resolve family conflicts, has difficulties with toileting, sleep-walks, and has difficulty engaging with same-aged children. (Pl.'s Br. at 21.) Because Dr. Gutierrez-Santiago ignored this evidence, plaintiff asserts, the ALJ erred in finding her opinion that L.S. had no limitations in this domain persuasive. The court disagrees.

In the decision, the ALJ found Dr. Gutierrez-Santiago's opinion that L.S. has no limitations in interacting and relating consistent with the record, including L.S.'s "often normal mood and affect, normal speech, and proficient social skills at school." (Tr. 26 (internal citations by the ALJ to specific records omitted).) At the hearing, Dr. Gutierrez-Santiago testified that L.S. previously had articulation deficits but that he no longer qualifies for speech language services. (Tr. 38.) Relying on school records from 2021 to 2022, Dr. Gutierrez-Santiago noted that L.S.'s intelligibility is good, and that he is friendly, hard-working, kind, respectful, and easy going. (Tr. 38-39, citing Tr. 294, 489.) Substantial evidence supports the ALJ's findings.

To the extent plaintiff relies on her own hearing testimony as the source of this information, it again falls short. As above, HALLEX provisions provide no enforceable duties on ALJs, and offer no recourse here. *See Lockwood*, 616 F.3d at 1072. To the extent that plaintiff's testimony about toileting difficulties and sleepwalking are found elsewhere in the record, that evidence was not ignored. Dr. Gutierrez-Santiago discussed that L.S. has a sleep disorder and occasionally struggles with toileting when considering domains five and six. And the ALJ discussed plaintiff's testimony about behavioral issues, enuresis, and sleepwalking multiple times in the decision. (Tr. 20, 21, 23, 27.) Again, plaintiff contends that the evidence about L.S.'s

sleep disorder and behavioral issues should have been weighted more heavily in the interacting and relating to others domain. When, as here, the ALJ's findings are reasonable and supported by substantial evidence, the court may not second-guess the ALJ even if they would support the outcome advocated by plaintiff. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

In sum, the ALJ did not err in finding Dr. Gutierrez-Santiago's opinion persuasive, as it was supported by substantial evidence in the record.

**B.    *Plaintiff's Lay Witness Testimony***

Plaintiff argues that the ALJ erred by failing to give specific, clear and convincing reasons for disregarding her subjective symptom testimony. (Pl.'s Br. 26-29, ECF 9.) The court disagrees. Plaintiff is not the claimant and thus her testimony is evaluated as a lay witness. *See Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1086 (9th Cir. 2000) (holding ALJ required to provide germane reasons to discount mother's testimony in child's disability benefits case because mother was not the claimant); *Tijerina ex rel A.V. v. Kijakazi*, No. 21-35559, 2022 WL 2064667, at *1 (9th Cir. June 8, 2022) (same); *Kristen R. ex rel. L.R. v. O'Malley*, 2024 WL 4533443, at *8 (same).

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may not reject such testimony without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Yet an ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by

one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).[2]

Here, plaintiff argues that the ALJ ignored certain evidence, such as testing results documenting LS.'s processing speed, and his ability to read, write, and communicate in combination with his visual and developmental impairments. (Pl.'s Br. 26-27, ECF 9.) Also contended by plaintiff is that the ALJ's finding that her testimony overstated L.S.'s limitations and was inconsistent with other evidence is not supported by substantial evidence. (Pl.'s Br. 27-29, ECF 9.)

The court disagrees. After summarizing plaintiff's testimony, the ALJ determined that plaintiff's testimony was inconsistent with the evidence because it "overestimate[s] the severity of the claimant's limits in a manner inconsistent with the complete record." (Tr. 28.) The ALJ detailed that her testimony was contradicted by L.S.'s improving writing and math scores, and that his reading had improved to second grade level. (Tr. 28 (citing Tr. 151, 210-11, 490, 494, 496, 499).) The ALJ further discussed that the L.S. was making progress with solving word problems, writing sentences, and that his memory was intact on examination, and that testing showed low average visual spatial, working memory, and processing speed, average verbal

---

[2]    The Commissioner contends that under the new regulations, ALJ's are not required to provide germane reasons for rejecting lay witness testimony. (Def.'s Br. at 4, ECF 11.) Although the "germane reasons" standard is under consideration at the Ninth Circuit, absent clear direction, the court will continue to require the ALJs to consider and address lay witness testimony. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (overruling germane reasons standard), *vacated and withdrawn*, 133 F.4th 968 (9th Cir. Apr. 7, 2025)); *see also Isaiah L. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-02081-AR, 2025 WL 2910190, at *6 (D. Or. Oct. 14, 2025) (concluding that "the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony"); *Karen W. v. Comm'r Soc. Sec. Admin.*, 6:24-cv-00294-AR, 2025 WL 654113, at *8 (D. Or. Feb. 28, 2025) (same, collecting cases)).

comprehension and fluid reasoning, normal speech, and that his mood and affect were often

normal. (Tr. 28.) Finally, the ALJ noted that L.S. has proficient social skills at school, including

self-awareness, responsible behavior, and self-management, and that he could shower and

change clothes with reminders. (Tr. 28 (citing Tr. 151, 181, 234, 289, 342, 427, 485, 496).)

Although plaintiff argues that L.S.'s skills at school do not reflect his skills at home, in

short, she seeks a different interpretation of the medical evidence. As discussed above, the ALJ's

findings with respect to L.S.'s limitations are supported by substantial evidence, and the ALJ

could point to that same evidence and reasonably conclude that plaintiff's testimony was

inconsistent with it, and thus overstated L.S.'s limitations. In short, the ALJ provided a germane

reason for discounting plaintiff's testimony. The ALJ did not err.

## C.    *Step Three – Functional Equivalence*

Plaintiff argues that the ALJ failed to consider all relevant evidence at step three when

assessing the six domains of functional equivalence, including test scores and evaluations,

resulting in inaccurate findings regarding LS.'s limitations in acquiring and using information,

attending and completing tasks, and in interacting and relating to others. (Pl.'s Br. 21-25, ECF

9.)

For the ALJ's finding of a marked degree of limitation in acquiring and using

information, the ALJ examined L.S.'s medical records, including diagnostic testing and

diagnoses, and his school records, including teacher evaluations and subsequent testing. (Tr. 22-

23, citing Tr. 181, 289, 333, 480, 489-99, 503.) Plaintiff argues that the ALJ erred and should

have found an extreme limitation in the acquiring and using information domain. According to

plaintiff, LS.'s 2022 medical diagnostic testing scores showed L.S. reading in the fourth

percentile on the Wide Range Achievement Test; his visual closure test was in the first

percentile—with an age equivalence below the age of four, and his orthographic processing

composite score was very low. (Pl.'s Br. 22-23, citing Tr. 341, 480, 502-03.) According to

plaintiff, his low testing scores were between 1.75 and 3 standard deviations below the mean,

and that the ALJ failed to explain why L.S. was not extremely limited.

Contrary to plaintiff's contention, test scores must be considered in combination with

other information about L.S.'s functioning. 20 C.F.R. § 416.926a(4)(i) ("We will not rely on test

scores alone."). Here, ALJ acknowledged those test results and incorporated them into the

evaluation of other record evidence, such as L.S.'s overall level of continued improvement in

school. So the ALJ's finding of a marked limitation in acquiring and using information is

supported by substantial evidence and is a reasonable interpretation of the record; the ALJ did

not err. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold

the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation.").

In the area of attending and completing tasks, the ALJ assessed L.S. with a less than

marked limitation. (Tr. 23.) The ALJ noted that L.S. was diagnosed with ADHD, was distracted

easily, had difficulties with tracking, needed redirection, and had trouble remaining seated, yet

he also received proficient scores on his progress reports when it came to self-management. (Tr.

151, 181, 427, 485.) Similarly, the ALJ discussed that L.S. required an IEP, which included pull-

outs for special instruction in reading, writing, and math, and in-class accommodations such as

shortened assignments and short instructions, he received satisfactory scores in following

directions and in homework. (Tr. 234, 289, 496.) During his Wechsler Intelligence Scale for

Children exam, L.S. also exhibited fidgeting during the exam, impulsive answers, and appeared anxious to be finished. (Tr. 370.) He also had low average to average working memory, processing speed, and verbal comprehension, and normal thought processes. (Tr. 342, 427, 485.) Plaintiff also argues that the ALJ failed to take L.S.'s parasomnia into account and cites several records containing a diagnosis for parasomnia. *See* (Pl.'s Br. 23, citing Tr. 43, 413, 417, 423, 425, 554, 561, 576.) Yet nothing in the records cited by plaintiff contains information regarding parasomnia's effects on L.S.'s ability to attend and complete tasks. As a result, even if the ALJ erred in failing to mention it, the error was harmless because it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, the ALJ's determination that L.S. has a less than marked limitation in his ability to attend and complete tasks is supported by substantial evidence.

Lastly, in interacting and relating with others, the ALJ assessed L.S. as having no limitations. (Tr. 24.) The ALJ cited L.S.'s normal mood and affect on examination, his generally normal, fluent speech and full intelligibility with correct sound production. (Tr. 294, 425, 427, 485.) The ALJ also noted he had proficient social awareness and self-management, along with relationship skills. (Tr. 151, 181-82.) According to his teachers, L.S. was polite, friendly, kind, compassionate, and empathetic with strong oral comprehension while also expressing himself well. (Tr. 340.) Plaintiff stated that L.S. has daily tantrums, is limited in his ability to follow rules involving his own safety, that he has problems following instructions, and that he cannot understand the language of his own community due to his verbal comprehension being in the fifth percentile. (Pl.'s Br. 24, ECF 9, citing Tr. 44-46, 171, 492.) Notably, L.S.'s teacher evaluations note that he has no problems interacting with others, nor do they mention behavioral

issues affecting his ability to interact with others. (Tr. 181-82, 205.) As for his inability to follow instructions, he can follow instructions after they are broken down into smaller parts. (Tr. 205, 234.) Given the above, the ALJ's finding that L.S. has no limitations in his ability to interact with others was supported by substantial evidence. Even if the evidence could be interpreted as plaintiff suggests, the ALJ's interpretation is reasonable and will not be disturbed. *See Tommasetti*, 533 F.3d at 1038.

In summary, the ALJ did not err in finding Dr. Gutierrez-Santiago's opinion persuasive, did not err in discounting plaintiff's lay testimony, and did not err at step three. The ALJ's findings are based on substantial evidence and are supported by reasonable inferences drawn from the record.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

DATED: December 19, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge